IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| **ARIZONA PUBLIC SERVICE COMPANY,** <br> **Plaintiff,** <br> **v.** <br> **THE UNITED STATES,** <br> **Defendant.** | **Case No. 03-2832** <br> **Judge Hodges** |

**JOINT STATUS REPORT**

Pursuant to this Court's order dated July 12, 2006, as supplemented by orders dated July 30, 2007, January 18, 2008, and June 3, 2008, the parties respectfully file this joint status report and proposals for a pretrial and trial schedule.

Discovery in this action is, for the most part, complete, and the remaining discovery is scheduled to be completed within the next two months. To date, the Government has taken 13 depositions of current and former employees of Plaintiff Arizona Public Service Company ("APS") and an expert, over 15 deposition days. Plaintiff has produced nearly eighty-five thousand pages of documentation to the Government, and responded completely to 71 of the 108 audit requests served by the Government. Thirty-seven audit requests remain either partially or fully open, by the Government's count. This Court-ordered audit process is still continuing, and APS has represented that it expects to respond to a substantial portion of the outstanding requests within the next week. The Government's auditors will then need time to review those responses

to determine whether the information provided satisfies their needs, and to determine whether follow-up requests are required. Further, the parties are attempting to work together in a manner that will allow APS to substantiate its claim for increased security costs that it attributes to the Department of Energy's delay in spent fuel acceptance, in a fashion that will minimize the amount of Safeguards Information (sensitive unclassified material that is subject to strict NRC regulations regarding its disclosure) that needs to be disclosed and ultimately presented in Court. The Government may need to depose an APS employee on this issue, if the matter cannot otherwise be resolved.

Plaintiffs in the spent nuclear fuel cases have deposed 58 current or former Government employees and/or contractors, in 104 depositions, totaling 149 days of testimony. While APS has not taken any fact depositions in this matter, the transcripts of these depositions are available to APS. The Government has also produced over two million pages of documents to the spent nuclear fuel plaintiffs.

The Government's expert reports and response to Plaintiff's damages schedules are now due on August 20, 2008. The parties expect to schedule the depositions of the Government's experts shortly thereafter. The parties expect that the depositions of the Government's experts, (and depositions regarding Plaintiff's rebuttal expert reports, if any) will be the last depositions in the case.

Both parties believe that the Court should set a trial date and schedules for pre-trial submissions. The parties believe that trial of the matter will take approximately two full weeks.

1. Plaintiff's position.

A. *Schedule.* Plaintiff believes that the necessary pre-trial filings can be scheduled,

and that certain operational activities at the plant can be accommodated, such that trial could commence on January 12, 2009. Accordingly, Plaintiff respectfully requests that the Court set a trial date as soon as practicable on or after January 12, 2009. Plaintiff proposes that its exhibit list, witness list, and pre-trial brief be due on October 15, 2008, and that the Government's exhibit list, witness list, and pre-trial brief be due on November 21, 2008.

B. *Location of trial.* Plaintiff requests that at least one week of the trial occur in Phoenix, Arizona, where most of Plaintiff's witnesses are located. The bulk of the fact witnesses in this case will be current or former APS employees, located in the Phoenix area. The Government's typical practice in the most recent spent fuel cases has been to call two or three expert witnesses, who often are not even located in the Washington, D.C. area and for whom Phoenix is therefore likely not a relative inconvenience, and perhaps two to three former DOE personnel, who, again, are in many cases located in remote parts of the country and able to travel to Arizona just as easily as Washington. The local proximity of some of the lawyers and the two or three current DOE employee witnesses who are likely to testify do not, Plaintiff respectfully suggests, warrant holding the entire trial thousands of miles from where the bulk of the witnesses reside and from where the facility that is the subject of this action is located. Most documents can be transported on discs, and Plaintiff believes that the logistical challenges of a trial in Phoenix are not insurmountable, nor even particularly daunting. It is common, if not routine, for this Court to hold proceedings in other parts of the country, and it is hard to imagine circumstances that would present a more compelling case than this one for doing so. Plaintiff of course defers to the Court's preferences in this regard, but respectfully suggests that the Court's

unique role as a forum with national jurisdiction, and the only forum in which APS could bring this action, warrant holding a portion of the trial in Phoenix.

Plaintiff is also likely to request that the Court conduct a site tour, which could be accomplished in conjunction with trial proceedings in Phoenix.

C. *The Government's promised motion regarding "rate of acceptance" evidence.* As the Government notes, in every spent fuel case to date it has argued that damages should only be measured by artificially-reduced "pick up rates," as measured in a 1991 planning document (the "1991 ACR"), which states on its face that the document is "not contractually binding." This Court has rejected, as a matter of law, the Government's position. *Indiana Michigan Power Company v. United States*, 57 Fed. Cl. 88 (2003) (Hodges, J.). The majority of other decisions of this Court are in accord, with the most recent determination confirming that the Government's pick-up rate arguments are "not . . . at all persuasive." *Carolina Power & Light Company v. United States*, No. 04-0037, 2008 WL 2154103, at *19 (Fed. Cl. May 19, 2008).[1]

In this case the Government served a Request for Admission, asking APS to admit that it would have no damages under the assumptions that DOE's "pick-up rate" obligations are as specified in the 1991 ACR. APS does not admit that it would have no damages under the Government's faulty scenario, but it would require extensive work, analysis, and, potentially, retention of additional experts for APS to quantify the amount of damages that it suffered under that scenario. *See, e.g., Yankee Atomic Power Company v. United States*, 73 Fed. Cl. 249, 302-

[1] *See also System Fuels v. United States*, 79 Fed. Cl. 37, 56 (2007); *Southern Nuclear Operating Co. v. United States*, 77 Fed. Cl. 396, 417-21 (2006); *Northern States Power Co. v. United States*, 78 Fed. Cl. 449, 462 & n.13 (2007). *But see, contra*, *Pacific Gas & Electric Company v. United States*, 73 Fed. Cl. 333 (2006) ("PG&E"). *PG&E* is the only case to hold to the contrary, and that case, along with *Southern Nuclear, System Fuels, and Northern States Power,* are currently on appeal.

305 (2006) (discussing expert testimony regarding "exchanges" of allocations). And, as we informed Government counsel, APS has no current intention of preparing or producing any such analyses in connection with this case. In the quite unlikely event that the law were to change before the trial of this matter occurred, all that APS has sought to do is to reserve its rights to respond to such a development fully, in order to achieve the correct result under the law as it exists when APS's claims are heard. The Government, not happy with that reservation, apparently will seek, now, to preclude APS from addressing any such possible change in the law between now and the time of trial. APS does not, as the Government states, effectively request a "partial stay," nor does APS in any way attempt to "circumvent the Court of Appeals for the Federal Circuit." Again, all that APS is currently refusing to do is to perform extensive analyses at the Government's behest, pursuant to the Government's theory of the case, which APS has no present intention of presenting at trial.

The Government's promised motion will: (a) seek to compel APS to produce analyses that APS has not prepared and does not currently intend to prepare or introduce at trial, (b) on the basis of a severely flawed Request for Admission premised upon a position that this Court has held, as a matter of law, to be wrong. We are happy to address the Government's promised motion in due course, but such a motion does not potentially affect the trial schedule in this case.

2. Defendant's position.

The Government agrees with the time frame for trial proposed by APS, provided that the trial encompasses all relevant legal issues, including any theories of recovery plaintiffs may present under the rate of acceptance as set forth in the 1991 Annual Capacity Report ("900-MTU acceptance rate"). By refusing to disclose their claimed damages at the 900-MTU acceptance

rate, plaintiff effectively requests a partial stay, whereby this litigation proceeds concerning only those legal theories that plaintiff considers relevant and viable. We oppose this attempt to circumvent the Court of Appeals for the Federal Circuit. Alternatively, if plaintiff chooses not to present its claimed damages at the 900-MTU acceptance rate within the current discovery period, it should be precluded from so doing at trial. Assuming trial is scheduled in January, we believe it would be better if trial were to begin a week or two later (January 19 or 26, 2009), to avoid the need for attorneys and support staff to cancel holiday-related travel and leave plans, particularly given plaintiff's request to conduct a portion of the trial outside Washington, D.C. The Government anticipates that this schedule will make it easier to coordinate and prepare witnesses and finalize trial preparation.

The Government does not believe that it is practical to hold part of the trial in Phoenix, Arizona. To accommodate the plaintiff's witnesses, the Government's attorneys, consultants, and auditors made numerous trips to Phoenix during the course of discovery in this matter. For purposes of conducting an efficient trial, however, the Government believes that it would be beneficial to conduct the trial in Washington D.C., where both the Government and the plaintiff's attorneys are based. Conducting part of a trial of this scope at a different location would present logistical burdens, such as locating a venue to hold the trial, shipping hundreds of boxes of documents and equipment across the country (and then shipping them right back to be used for the second half of trial), as well as flying out the necessary support personnel to assist in conducting the trial. Even if the Court deems it necessary to conduct a site tour, we believe that can be accomplished without moving proceedings to Phoenix. Nevertheless, although the Government believes that it will be far more efficient to conduct the entire trial at the Court of

Federal Claims, we respectfully defer to the Court's judgment as to where to hold trial in this matter. If the Court decides to conduct a portion of the trial in Phoenix, we request that there be a brief continuance, after the Phoenix portion of the trial, to allow for documents to be shipped back to Washington, D.C. and to set up the courtroom in the Court Of Federal Claims.

We believe that plaintiff's refusal to disclose its claimed damages under the 900-MTU acceptance rate is a critical issue that the Government believes needs to be resolved prior to trial, upon which we plan to submit a motion in the near future. In this and virtually all of the spent nuclear fuel cases, one of the major contested issues is that of the rate of acceptance at which the Department of Energy was obligated to remove fuel from the nuclear utilities pursuant to the Standard Contract. APS, like other plaintiffs, contends that the Court should hold that the Government was required to accept spent fuel beginning January 31, 1998 at a steady-stream rate of 3000 Metric Tons Uranium ("MTU"), following a brief ramp-up period. The Government contends, as this Court held in Pacific Gas and Electric Co. v. United States, No. 2007-5046 (Fed. Cir.), that the rate set forth in the contractually mandated 1991 Annual Capacity Report ("ACR") defines the Government's obligations for the first ten years of acceptance under the Standard Contract. This essential question regarding the legally required rate of acceptance has been briefed and argued before the United States Court of Appeals for the Federal Circuit in several cases that were consolidated for argument: Pacific Gas and Electric Co. v. United States, No. 2007-5046 (Fed. Cir.), Yankee Atomic Electric Co. et. al. v. United States, No. 2007-5025, -5026, -5027, -5031, -5032, -5033 (Fed. Cir.), and Sacramento Municipal Utility District v. United States, No. 2007-5052, -5097 (Fed. Cir.). Despite plaintiff's implication that the law on this issue is settled, we are awaiting a decision from the Federal Circuit in those cases.

The damages calculation provided to the Government by APS, as required by Rule 26(a)(1)(C) of the Rules of the Court of Federal Claims ("RCFC"), set forth the damages to which APS claims it is entitled through the end of the claim period in this case (December 31, 2006) at the 3000 MTU rate. No calculation of damages at the acceptance rate in the 1991 ACR was provided by APS to the Government. After reviewing the documents provided by APS, taking the depositions of key APS witnesses, and accounting for the fact that APS does not have any allocations in the first ten years of acceptance under the 1991 ACR (due to the fact that APS's plant is relatively new, and is therefore far down the acceptance queue), it became apparent to the Government that it was unlikely that APS had any claim for damages during the claim period at the 1991 ACR rate. To confirm this fact and streamline the issues presented at trial in this matter, the Government served APS with a request for admission in March 2008 that asked it to admit that it would have no damages during the claim period if the Court determined to apply the rate set forth in the 1991 ACR. APS refused to make this admission, but at the same time refused to provide a computation of the specific damages to which it was claiming an entitlement at this rate. We have attempted unsuccessfully to resolve this issue with plaintiff's counsel.

We anticipate that we will be filing a motion to deem admitted the fact that, at a 900 MTU rate, APS has no recoverable damages or, in the alternative, to compel APS to identify the damages that it would have at a 900 MTU rate. APS appears to have taken the position that it can defer identifying whether it has any damages at the 900 MTU rate until after the United States Court of Appeals for the Federal Circuit has issued decisions upon pending appeals in that court and that, if the Federal Circuit agrees with this Court's decision in <u>Pacific Gas & Electric</u>

Co. v. United States, Nos. 04-83C & -84C (Fed. Cl.), applying the 900 MTU rate to the damages analysis, it can then identify damages at that rate, regardless of the stage of these proceedings. We disagree and believe that any trial of this case should resolve both parties' legal theories and presentations once and for all, not simply a resolution of only the plaintiff's legal theories with the possibility of resuming trial upon the Government's theories if the Federal Circuit issues a decision in the Government's favor. We are particularly troubled by plaintiff's assertion that its litigation theories under a 900-MTU acceptance rate require the submission of expert reports, because the deadline for plaintiff to submit its expert reports was May 31, 2007. We request that, once we file our motion, the Court resolve it in an expedited manner so that we can obtain the necessary information and have an opportunity to complete any necessary discovery, as well as provide our experts with an opportunity to conduct any necessary analysis upon that information and discovery, prior to the scheduled trial. To the extent that APS is unable or unwilling to provide us in a timely manner with the information that we need to develop the facts associated with our positions in this case, it potentially could affect the trial schedule in this case.

Respectfully submitted,

GREGORY G. KATSAS
Acting Assistant Attorney General

JEANNE E. DAVIDSON
Director

s/ Harold D. Lester
HAROLD D. LESTER, JR.
Assistant Director

s/ Brad Fagg
BRAD FAGG
MORGAN, LEWIS & BOCKIUS, LLP
1111 Pennsylvania Avenue, NW
Washington, DC 20004
Telephone: (202) 739-5191
Facsimile: (202) 739-3001

Attorneys for Plaintiff

June 27, 2008

s/ Christopher J. Carney
CHRISTOPHER J. CARNEY
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit, 8th Floor
1100 L Street, NW
Washington, D.C. 20530
Telephone: (202) 616-0170
Facsimile: (202) 514-8624

Attorneys for Defendant

CERTIFICATE OF FILING

I hereby certify that on this 27th day of June 2008, a copy of the foregoing "JOINT STATUS REPORT" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/ Brad Fagg